UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SECURA INSURANCE,

    Plaintiff,

v.

DTE GAS SERVICES COMPANY f/k/a
MICHCON FUEL SERVICES COMPANY,
EARL E. KNOX COMPANY d/b/a KNOX
WESTERN, and UNITED FILTRATION
SYSTEMS, INC.,

    Defendants.

and

UNITED FILTRATION SYSTEMS, INC.,

    Counter-Plaintiff,

v.

SECURA INSURANCE,

    Counter-Defendant.

_____/

CASE NO. 2:14-cv-10401

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

This matter is before the Court on Plaintiff Secura Insurance's ("Secura's") Motion for Summary Judgment. (Doc. 36.)  Secura has filed a declaratory action seeking judgment that it has no duty to defend or indemnify Defendant United Filtration Systems, Inc. ("United"), in another case pending before this Court.  In support of its position, Secura argues that the terms of the liability insurance contract and a pollution

exclusion preclude coverage for the claims at issue in the present cases. In response, Defendants, United, DTE Gas Services Company ("DTE"), and Earl E. Knox Company ("Knox"), assert that the underlying lawsuit advances claims for property damage, which is covered under the insurance contract. (Docs. 37, 39, 40.) Defendants also contend that the pollution exclusion is inapplicable. For the following reasons, the Court **DENIES** Secura's motion.

## II.   STATEMENT OF FACTS

The present case derives from another action currently pending before this Court, bearing Case Number 2:13-cv-13930 (the "Underlying Case"). On August 6, 2013, DTE initiated the Underlying Case against Knox based on alleged defects in compressed natural gas ("CNG") fuel filtration equipment supplied by Knox to DTE in August 2011. (Doc. 39, Ex. A.) According to DTE, the filtration equipment failed to conform to specifications set forth in the purchase orders and failed to remove the appropriate amount of oil from the CNG fuel. (Id.) Therefore, the CNG fuel contained more than the typical trace amounts of oil. The contaminated CNG fuel was sent to DTE's storage and filling station dispensers in Wixom and Wyoming, Michigan. (Id.) Subsequently, DTE's CNG fuel customers reported oil contamination and resultant loss of use of fleet vehicles. (Id.) Although DTE ultimately corrected the filtration problem, all downstream equipment remained contaminated with oil, including customer vehicles and DTE filling station equipment. (Id.) At its own expense, DTE hired contractors to steam clean oil out of its CNG fuel storage vessels and filling station equipment and additionally reimbursed its customers to clean their vehicle fuel tanks and systems. (Id.) Subsequently, DTE filed claims against Knox for breach of contract, breach of implied

and express warranties, and declaratory judgment seeking that Knox indemnify and defend DTE against claims of loss, damage, or expense arising out of the defective equipment.  (Id.)

Knox, in turn, filed a third party complaint on October 4, 2013, against United, alleging that it had entered into a purchase order agreement with United to provide filtration equipment and components pursuant to the specifications issued by DTE. (Doc. 39, Ex. B.)  Knox claims that United is responsible for any defects or failures of the supplied equipment to conform to the specifications.  The third party complaint sets forth claims for indemnification, breach of contract, and breach of implied and express warranties.  (Id.)  United tendered Knox's third party complaint to Secura, its business owners' liability insurer, and Secura agreed to provide United a defense against the lawsuit pursuant to a reservation of rights letter dated January 8, 2014.  (Doc. 35, Ex. D.)

On January 28, 2014, Secura filed the instant action against United, DTE, and Knox, seeking a declaratory judgment that it has no duty to defend or indemnify United in the Underlying Case.  (Doc. 1.)  Presently before the Court is Secura's Motion for Summary Judgment.

### III.    STANDARD OF REVIEW

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." State Farm Fire & Cas. Co. v. McGowan, 421 F.3d 433, 436 (6th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" Brown v. Scott, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. Anderson, 477 U.S. at 248; McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 251

**IV. DISCUSSION**

When analyzing the scope of policy coverage, the fundamental principles of contract and insurance law apply. Radenbaugh v. Farm Bureau Gen. Ins. Co., 240 Mich. App. 134, 138 (Mich. Ct. App. 2000). A court must determine the parties' intent by reading the policy as a whole and giving effect to the terms according to their ordinary and plain meaning. Id. If the court determines the policy to be unambiguous, it must enforce it as written. Id. at 139. However, if a policy is ambiguous, it will be construed against the insurer and in favor of the insured. Id.

An insurance company's duty to provide a defense for its insured is broader than its duty to indemnify. Allstate Ins. Co. v. Freeman, 432 Mich. 656, 662 (Mich. 1989). The duty to defend "extends to allegations which '*even arguably* come within the policy coverage.'" Detroit Edison Co. v. Mich. Mut. Ins. Co., 102 Mich. App. 136, 142 (Mich. Ct. App. 1980) (emphasis in original). If there is doubt as to whether coverage extends to the allegations set forth in a complaint, all uncertainty must be resolved in favor of the insured. Ill. Employers Ins. of Wasau v. Dragovich, 139 Mich. App. 502, 506 (Mich. Ct. App. 1984). In contrast, a duty to indemnify arises if the factual circumstances fall within the scope of the parties' agreement. See Honeywell Int'l, Inc. v. Lutz Roofing Co., No. 08-13311, 2009 U.S. Dist. LEXIS 47922 at *7 (E.D. Mich. June 8, 2009).

At hearing, Secura's counsel appeared to concede that the terms of the general liability coverage extend to the present factual circumstances and that coverage is not precluded because the Underlying Case is premised on contractual theories of liability. Therefore, the Court will expeditiously dispose of the question of whether coverage exists under the policy before it reaches the question of whether an exclusion precludes coverage.

In the liability insurance policy at issue here, Secura insures damages related to bodily injury or property damage caused by an "occurrence." (Doc. 1, Ex. 4.) The policy defines "property damage" as physical injury to or loss of use of tangible property. (Id.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id.)

To ascertain whether Secura owes a duty to defend United in the Underlying Case, the Court must review the allegations and damages advanced in the Underlying Case. In so doing, the substance and not the form of the complaint is controlling. Dragovich, 139 Mich. App. at 507 ("[I]t is necessary to focus on the basis for the injury and not the nomenclature of the underlying claim in order to determine whether coverage exists."). The general allegations contained in DTE's complaint describe at some length the damage to and loss of use of DTE's equipment and customers' vehicles resulting from CNG fuel contamination and the non-conforming filtration equipment. (Doc. 39, Ex. A.) For example, Count I of the complaint, setting forth the breach of contract claim, alleges damages encompassing "[t]he costs incurred by DTE's customers, some of which have been reimbursed by DTE . . . including but not limited to vehicle cleaning and repair expenses." (Id.) In order to correct the damage, DTE purchased and replaced multiple components of its own equipment, hired contractors to steam clean the oil out of CNG storage vessels, and reimbursed costs incurred by customers to clean their vehicle fuel tanks and systems. (Id.)

The substance of the Underlying Case alleges damages broader than mere economic harm due to breach of contract. See Radenbaugh, 240 Mich App. at 141 (finding that damage to a mobile home and its basement attributable to erroneous

6

instructions for constructing the basement amounted to "damages broader than mere diminution in value of the insured's product caused by alleged defective workmanship, breach of contract, or breach of warranty"). The complaint alleges damage to property, including DTE customers' vehicles and DTE's filling station equipment, which resulted in physical injury and loss of use. According to well-settled case law, the fact that the claims advanced in DTE's complaint primarily involve breach of contract and breach of warranty does not preclude coverage. See Bundy Tubing Co. v. Royal Indem. Co., 298 F.2d 151, 153 (6th Cir. 1962) ("The fact that the claims here involved breach of warranty or negligence did not remove them from the category of accident."). Further, the Underlying Case involves damage to property other than United's work product. See Hawkeye-Security Ins. Co. v. Vector Constr. Co., 185 Mich. App. 369, 371 (Mich. Ct. App. 1990) ("*Bundy* stands for nothing more than the proposition that an insurer must defend and may become obligated to indemnify an insured under a general liability policy of insurance that covers losses caused by "accidents" where the insured's faulty work product damages the *property of others*." (emphasis added)).

It is undisputed that United did not intend for these damages to occur. Therefore, the alleged damages classify as an "occurrence" or "accident," since the damage was an unexpected and unintended result. See Bundy, 298 F.2d at 153 (defining "accident," within the meaning of a liability insurance policy, as "an unexpected unforeseen or undesigned happening or consequence from either a known or an unknown cause."); see also Frankenmuth Mut. Ins. Co. v. Masters, 460 Mich. 105, 114 (Mich. 1999) (defining "accident" as "an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not

7

naturally to be expected"). Accordingly, the claims advanced in the Underlying Case fall within the scope of the liability policy.

The bulk of the present dispute centers on the applicability of the pollution exclusion addendum. The general pollution exclusion applies to cases relating to "the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of 'pollutants.'" The addendum supplements the general exclusion by precluding liability coverage for bodily injury, property damage, and personal and advertising injury arising out of a "pollution hazard" attributable to the insured's products or work. A "pollution hazard" is defined as "an actual exposure or threat of exposure to 'pollutants.'" The policy defines a "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The exclusion applies whether or not such an irritant or contaminant has any function in the insured's business operations.

As a preliminary matter, United contends that the exclusion is inapplicable under the present circumstances because it was intended to exclude from coverage only situations involving traditional environmental pollution. The Michigan Court of Appeals has made clear that pollution exclusions are not limited to traditional environmental pollution. See McKusick v. Travelers Indem. Co., 246 Mich. App. 329, 337-38 (Mich. Ct. App. 2001). Where there are "no exceptions to the exclusion and no limitations regarding its scope, including the location or other characteristics of the discharge," courts may not "engraft" limitations by interpreting the provision to include environmental terms of art requiring the pollutant to cause traditional environmental pollution. Id. Accordingly, United's argument is unavailing.

8

Next, the Court must determine whether the excess oil in DTE's equipment and the customers' vehicles classifies as a "pollutant." It is first noted that exclusionary clauses are strictly construed in favor of the insured. Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 567 (Mich. 1992). Therefore, any ambiguities will be resolved in the insured's favor. Radenbaugh, 240 Mich. App. at 139. As described above, the policy defined pollution as an "irritant" or "contaminant." Case law has further defined a contaminant as "something that contaminates," meaning "to make impure or unsuitable by contact or mixture with something unclean, bad, etc." Hastings Mutual Insurance Company v. Safety King, Inc., 286 Mich. App. 287, 294 (Mich. Ct. App. 2009). Therefore, a contaminant has been characterized as a substance that is present in an area it is not supposed to be located and causes undesirable effects. Id.

United submits that the higher percentage of oil that passed through the allegedly defective filtration system does not meet the definition of "contaminant" because oil is generally supposed to be in the systems utilized by DTE, albeit at lower concentrations. Therefore, while the excess oil caused undesirable effects, it was present in an area where oil was generally supposed to be located. The Court finds that it is ambiguous whether the presence of a higher concentration of a substance than is normal or appropriate is properly classified as a "pollutant" or a "contaminant." Construing the policy narrowly in favor of the insured, the Court is therefore persuaded by United's reasoning. The filtration system was never intended or required to eliminate virtually all traces of oil from the CNG fuel; therefore, any undesirable effects were not caused by the mere presence of oil but rather by the higher concentration. Analogously, an iron filter is designed to remove a certain percentage of iron deposits from hard water. Yet, if

the iron filter failed to remove the required percentage of iron and, consequently, caused rust stains to appear inside a washing machine or on laundry, it is unlikely that those undesirable effects would be deemed pollution.  Nor would a defectively-built burst dam that caused a field to flood be considered to have caused pollution.

Knox further argues that the pollution exclusion applies only in situations involving alleged or threatened "discharge, dispersal, seepage, migration, release, or escape" of pollutants, which does not encompass the present circumstances. Specifically, Knox argues that all of the above words connote an emission, whereas the present case involves the mere existence of and failure to remove the oil.  Although it is arguable that in a broad sense of the language, an excess concentration of oil escaped from or seeped from the filtration system, Knox's interpretation is also reasonable. Therefore, the terms at issue here are as readily susceptible to the narrow interpretation advanced by Knox as they are to a broader interpretation favoring Secura.  Construing this ambiguity in favor of the insured, the Court is constrained to accept the stricter interpretation and to find that the exclusion does not apply under the present factual circumstances.

Although Secura contends that the language relating to "discharge, dispersal, [or] seepage . . ." does not apply to the pollution addendum, it is conceded that the addendum was intended to supplement, not supersede, the general pollution exclusion. The addendum provides that "[a]ll other terms and conditions of this policy not in conflict with the terms and conditions of this endorsement shall continue to apply."  The language limiting the pollution exclusion to "discharge, dispersal, seepage, migration, release, or escape" of pollutants does not conflict with the terms of the addendum.

Accordingly, these words are to be given effect, as they serve a reasonable purpose. See Freeman, 432 Mich. at 688.

Because Secura has not met its burden in showing that the terms of the contract preclude coverage or that the pollution exclusion applies, the Court cannot find that there is no duty to defend or no duty to indemnify.

**V.     CONCLUSION**

For the foregoing reasons Secura's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**


Date:   December 11, 2014                           s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    United States District Judge



CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 11, 2014.

                                                    s/ Kay Doaks
                                                    Case Manager

11